IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | | |
|---|---|---|---|
| LEAH LEONHARDT, | ) | | |
| | ) | | |
|     Plaintiff, | ) | | |
| | ) | Civil Action No. 7:09-CV-00205 | |
| v. | ) | | |
| | ) | | |
| MICHAEL J. ASTRUE, | ) | By: | Hon. Michael F. Urbanski |
| Commissioner of Social Security, | ) | | United States Magistrate Judge |
| | ) | | |
|     Defendant. | ) | | |

**REPORT AND RECOMMENDATION**

Plaintiff Leah H. Leonhardt ("Leonhardt") brought this action for review of the Commissioner of Social Security's ("Commissioner") decision denying her claim for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act") beginning January 28, 2006. On appeal to this court, Leonhardt argues that the Commissioner erred by failing to properly evaluate the medical opinions of her treating physicians. The Administrative Law Judge ("ALJ") did not find the opinions of Leonhardt's treating physicians persuasive because the opinions were inconsistent with the weight of the objective medical evidence. After carefully reviewing the record, the undersigned finds that the ALJ's decision to discount the opinions of Leonhardt's treating physicians, and the ALJ's conclusion that Leonhardt is not disabled from all forms of substantial gainful activity, were both amply supported by substantial evidence. As such, it is **RECOMMENDED** that the Commissioner's decision be affirmed.

**I. Standard of Review**

"Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12

months." 42 U.S.C. § 423(d)(1)(A). The "[d]etermination of eligibility for social security benefits involves a five-step inquiry." Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002). This inquiry asks whether the claimant (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his or her past relevant work; and if not, (5) whether he or she can perform other work. Heckler v. Campbell, 461 U.S. 458, 460-462 (1983); Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (citing 20 C.F.R. § 404.1520). If the Commissioner conclusively finds the claimant "disabled" or "not disabled" at any point in the five-step process, he does not proceed to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Once the claimant has established a prima facie case for disability, the burden then shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"),[1] considering the claimant's age, education, work experience, and impairments, to perform alternative work that exists in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975). If the Commissioner decides that the claimant is not disabled, the Claimant may seek review by the district court.

Section 405(g) of Title 42 of the United States Code authorizes judicial review of the Social Security Commissioner's denial of social security benefits. Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Under the Social Security Act, [a reviewing court] must uphold the

---

[1] RFC is a measurement of the most a claimant can do despite his limitations. See 20 C.F.R. §§ 404.1545(a), 416.945(a). According to the Social Security Administration:

> RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule.

Social Security Regulation (SSR) 96-8p. RFC is to be determined by the ALJ only after he considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain). See 20 C.F.R. §§ 404.1529(a), 416.929(a).

factual findings of the [ALJ] if they are supported by substantial evidence and were reached through application of the correct, legal standard." Id. (alteration in original) (quoting Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996)). The court may neither undertake a de novo review of the Commissioner's decision nor re-weigh the evidence of record. Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992). Judicial review of disability cases is limited to determining whether substantial evidence supports the Commissioner's conclusion that the plaintiff failed to satisfy the Act's entitlement conditions. See Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). "Although we review the [Commissioner's] factual findings only to establish that they are supported by substantial evidence, we also must assure that [his] ultimate conclusions are legally correct." Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980).

Evidence is substantial when, considering the record as a whole, it might be deemed adequate to support a conclusion by a reasonable mind, Richardson v. Perales, 402 U.S. 389, 401 (1971), or when it would be sufficient to refuse a directed verdict in a jury trial. Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Substantial evidence is not a "large or considerable amount of evidence," Pierce v. Underwood, 487 U.S. 552, 565 (1988), but is more than a mere scintilla and somewhat less than a preponderance. Perales, 402 U.S. at 401. If the Commissioner's decision is supported by substantial evidence, it must be affirmed. Id., 42 U.S.C. § 405(g).

## II. Factual and Procedural Background

Leonhardt was born in 1962 (Administrative Record 107, hereinafter "R. 107"), and at the time of the ALJ's decision was considered a "younger individual" under the Act. (R. 21). 20 C.F.R. §§ 404.1563(b), 416.963(b). Leonhardt graduated from high school and completed two years of college. (R. 26). She worked as a sheriff's deputy, narcotics investigator, and public safety officer before retiring from the law enforcement field in 1994. (R. 112). She also

worked as a housecleaner for some time, as well as a long distance trucker until 2002. Id. In June of 2002, she quit work as a long distance truck driver to take care of her ailing parents. (R. 119). Leonhardt alleges a disability onset date of January 28, 2006 due to a discogenic, degenerative back disorder and hernias (R. 53) or, alternatively, severe depression, mental illness, insomnia, arthritis pain, Raynaud's Syndrome, and acid reflux (R. 111) or, alternatively, fibromyalgia, insomnia, and chronic fatigue. (R. 150). Her application for benefits was rejected by the Commissioner both initially and again upon reconsideration. (R. 52-53). An administrative hearing was convened before an ALJ on May 28, 2008, at which Leonhardt, represented by counsel, and a vocational expert both appeared and testified. (R. 22-51). In an opinion dated June 10, 2008, the ALJ concluded that Leonhardt was not disabled because Leonhardt retained the RFC to perform light work under certain restrictions. (R. 18). In reaching this decision the ALJ found the contrary opinions of Dr. Boone and Dr. Lapp to be unpersuasive because they were "inconsistent with the weight of the objective medical evidence and the claimant's activities of daily living." Id. The Appeals Council denied Leonhardt's request for review and this appeal followed. (R. 1).

### III. Analysis

Leonhardt argues that the ALJ erred by failing to employ the proper standard in her evaluation of the opinions of claimant's treating physicians, Dr. Boone and Dr. Lapp.[2] Plaintiff correctly notes that the treating physician's medical opinions are entitled to great deference. See

---

[2] Although the ALJ deemed Dr. Lapp a "treating physician," the undersigned notes that Dr. Lapp's opinion might fairly be denied any greater deference as the opinion of a treating physician because Dr. Lapp has had only limited interaction with the claimant. Although Leonhardt alleges a disability onset date of January 28, 2006, she did not see Dr. Lapp until April 26, 2007 – apparently after her counsel arranged this visit. (R. 353). It was at this first visit that Dr. Lapp prepared a Multiple Impairment Questionnaire and opined as to her RFC. Moreover, it appears she only continued treatment with Dr. Lapp until December 31, 2007, a period of only eight months. (R. 380). See Hines v. Barnhart, 453 F.3d 559, 563 (4th Cir. 2006) (explaining that courts typically "accord greater weight to the testimony of a treating physician because the treating physician has necessarily examined the applicant and has a *treatment relationship* with the applicant.") (emphasis added).

4

Hines v. Barnhart, 453 F.3d 559, 563 (4th Cir. 2006) (explaining that courts typically "accord greater weight to the testimony of a treating physician because the treating physician has necessarily examined the applicant and has a treatment relationship with the applicant"); 20 C.F.R. § 404.1527(d)(2) ("Generally, we give more weight to opinions from your treating sources"). In fact, in certain circumstances, the opinion of a treating physician is entitled to controlling weight. 20 C.F.R. § 404.1527(d)(2) ("If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight."). But the opinion of a treating source is not always entitled to great deference or greater weight. Instead, the regulations explain that when opinion is not given controlling weight, the ALJ will "apply the factors listed [below]…in determining the weight to give the opinion." Id. One of those factors is the length of the treatment relationship. See 20 C.F.R. § 404.1527(d)(2)(i). Other relevant factors are the supportability of the opinion, as determined by the evidence presented by the medical source, and consistency of the opinion with the record as a whole. See 20 C.F.R. § 404.1527(d)(3), (4). For example, contradictory persuasive evidence can discredit a treating physician's opinion. See Foster v. Heckler, 780 F.2d 1125, 1130 (4th Cir. 1986) ("A treating physician's testimony is ignored *only* if there is persuasive contradictory evidence.") (italics in original). Finally, a treating physician's opinion is not given any special deference when the opinion relates to the claimant's ability to work or their RFC. See 20 C.F.R. § 404.1527(e)(2) ("Although we consider opinions from medical sources on issues such as. . . your residual functional capacity. . . the final responsibility for deciding these issues is reserved to the Commissioner.").

In the instant case, the ALJ specifically indicated that the opinions of Dr. Boone and Dr. Lapp were not persuasive because they were "inconsistent with the weight of the objective medical evidence and the claimant's activities of daily living." (R. 18). Moreover, the ALJ's conclusion that Leonhardt was not disabled was based on a finding that Leonhardt possessed the residual functional capacity to perform light work, an issue on which the ALJ does not defer to Leonhardt's treating physician's opinions. (R. 18) Because substantial evidence supports the ALJ's conclusion that Dr. Boone and Dr. Lapp's opinions are inconsistent with other persuasive evidence, and because substantial evidence supports the ALJ's conclusion that Leonhardt possessed the RFC to perform light work, the undersigned **RECCOMMENDS** that the ALJ's decision be affirmed.

**A. Inconsistencies Between Record and Opinions**

The ALJ concluded that the opinions of Dr. Boone and Dr. Lapp were not persuasive because they were "inconsistent with the weight of the objective medical evidence and the claimant's activities of daily living." (R. 18). Substantial evidence supports this conclusion. Dr. Boone reported that Leonhardt suffered from back pain, sometimes reaching level 10 in severity (R. 341-342). Dr. Lapp also reported that Leonhardt suffered pain in the shoulders, neck, and low back – again sometimes reaching level 10 in severity (R. 354-355). But Leonhardt reported to Dr. Liebrecht on February 21, 2008 that she "hasn't had any back problems before" and "never had back pain before." (R. 423, 425). In fact, in the Pain Questionnaire Leonhardt completed for her disability, she omitted any discussion of lower back pain at all (R. 122).

Dr. Boone reported on the Multiple Impairment Questionnaire that Leonhardt's medications have not been successful. (R. 342, 345). Dr. Lapp concurred. (R. 355). And yet

6

other medical records directly contradict these alleged inefficacies. In February of 2006, however, Dr. Boone noted that "seroquel has helped her crying a lot," "relafen has helped her in the past [with arthritis pain]." (R. 248). Dr. Boone reported in January of 2007 that "Vicodin seems to have helped" her fibromyalgia. (R. 367). Dr. Lapp reported that "[hydrocodone] 7.5 reduces pain to tolerable level without any adverse effects." (R. 311). In fact, other reports indicate that Leonhardt's reported high levels of pain are sometimes alleviated without medication (R. 332) ("10/06-11/06 pain in arms gone. w/o meds hypervigilant").

Other inconsistencies abound as well. Dr. Lapp noted that Leonhardt suffered from the "inability to read and comprehend." (R. 311). But Leonhardt still listed reading as one of her hobbies that she did everyday. (R. 138). Leonhardt's physicians opined that she could not work because of her inability to sit or stand for more than 2-3 hours per day (R. 342) or even less. (R. 355). But Dr. Boone described the reason that Leonhardt was seeking disability as "severe depression that is making it difficult for her to cope." (R. 431).[3] Leonhardt reported severe memory problems to Dr. Lapp (R. 311, 521); but her memory was normal when she was evaluated by Dr. Peters in July of 2008. (R. 533, 538). Thus, given all of these inconsistencies in the record, all of which contradict certain aspects of the treating physicians' opinions, the ALJ's decision to discount these opinions as being rather unpersuasive was supported by substantial evidence.

**B. Leonhardt Possessed RFC for Light Work**

In determining whether the ALJ's conclusion regarding Leonhardt's RFC was supported by substantial evidence, it is important that the undersigned acknowledge that "it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's

---

[3] The undersigned notes that her depression was not considered by other, more specialized physicians as significantly affecting her ability to work (R. 320-332).

function to substitute its judgment for that of the [Commissioner] if his decision is supported by substantial evidence." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Here, the record undoubtedly contains substantial evidence, *i.e.*, "relevant evidence such as a reasonable mind might accept as adequate to support a conclusion," that Leonhardt possessed the RFC for light work. Richardson v. Perales, 402 U.S. 389, 401 (1971).

The ALJ concluded that the claimant's statements concerning the intensity, persistence and limiting effects of her symptoms were not credible and were inconsistent with the RFC assessment. For example, Leonhardt testified that she left work in 2002 because of her disability: "I really left work in '02 because I just couldn't do it anymore…the muscle ache and pain and stiffness, and the fatigue also." (R. 28). But Leonhardt reported to Dr. Lapp that "she had left work in 2002 to care for her ailing parents." (R. 311).

Leonhardt has also reported that she had extensive pain in her arms and neck. This resulted in her having significant trouble reaching and standing. (R. 123). These limitations, she asserted, began in 2002. Id. Dr. Lapp found that Leonhardt was medically precluded from "grasping, turning, or twisting objects" as well as "using arms for reaching." (R. 357). But in April of 2006, a physical exam found that she had "5/5 strength…good shoulder elevation, abduction, and rotation and good cervical spine motion." (R. 205). In May of 2006, Dr. Paige's "bilateral upper extremity exam reveal[ed] normal motor strength throughout with normal sensation and full range of motion." (R. 220). Although there were some problems noted in the cervical exam, overall Dr. Paige found that Leonhardt "show[ed] a full range of motion of cervical spine." Id. Of significance, when Leonhardt filled out her Pain Questionnaire she never indicated that her disability negatively affected her ability to stand, lift, reach, or use her hands. (R. 139).

Dr. Boone reported that Leonhardt had pain in her legs and could only stand or walk for one hour a day. (R. 342). Dr. Lapp opined that Leonhardt could only stand or walk for less than an hour. (R. 355). Leonhardt herself testified that she had trouble walking, and could only walk to her mailbox and back. (R. 32). But the bilateral lower extremity examination by Dr. Paige found "normal motor strength throughout with normal sensation and full range of motion." (R. 221). Additionally, Dr. Paige found that Leonhardt had "normal gait and station and appropriate coordination…[with] straight leg raise normal bilaterally." (R. 221). Indeed, Dr. Lapp and Dr. Boone's reports, as well as Leonhardt's testimony, conflict with descriptions Leonhardt made of her normal daily activities. In her Pain Questionnaire, Leonhardt indicated no problem with walking, stair climbing, or standing. (R. 139). In fact, in direct contradiction to her testimony, Leonhardt claimed: "I can walk a couple of miles…walking is not a problem for me." Id.

The ALJ, in the face of this conflicting evidence, decided that the "claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible." (R. 19). Thus, the ALJ depended on descriptions of claimant's daily activities for evidence that Leonhardt's RFC permitted light work. For example, Leonhardt is able to drive, shop, do laundry, clean the house, walk a couple of miles, and work on a computer. (R. 136-141). Because the opinions of Leonhardt's treating physicians were unpersuasive, the ALJ also relied on the opinions of state agency physicians Hartman and McGuffin. Both Dr. Hartman and Dr. McGuffin found that Leonhardt was "not significantly limited in relation to her alleged symptoms," especially considering that she had "undergo[ne] surgery for her Cervical Djd, which has resulted in significant improvement of her symptoms." (R. 302, 338). Accordingly, both Drs. Hartman and McGuffin found that Leonhardt could frequently lift 10 pounds, stand or walk for 6 hours per work day, sit for 6 hours per work day, and was generally unlimited in her

9

posture and manipulative ability. (R. 299, 335). This comports with the RFC for light work. See 20 C.F.R. 404.1567(b).

Although the ALJ considers opinions from treating physicians on claimant's residual functional capacity, "the final responsibility for deciding these issues is reserved to the Commissioner." See 20 C.F.R. § 404.1527(e)(2). Here the ALJ determined, after considering all the evidence in the record, that Leonhardt had the RFC for light work as defined in 20 C.F.R. 404.1567(b). (R. 18). Given the undersigned's review of the record, and given that the standard of review requires only that substantial evidence support the ALJ's conclusion, it is clear that the ALJ's conclusion should be affirmed. Substantial evidence supports the ALJ's conclusion that Leonhardt has the RFC to perform light work, and when, as here, the Commissioner's decision is supported by substantial evidence, it must be affirmed. 42 U.S.C. § 405(g).

## IV. Conclusion

At the end of the day, it is not the province of the court to make a disability determination. It is the court's role to determine whether the Commissioner's decision is supported by substantial evidence. It appears that the ALJ properly considered all of the objective and subjective evidence in adjudicating Leonhardt's claim for benefits and in determining if her impairments prevented her from performing any work. Moreover, all facets of the Commissioner's decision in this case were supported by substantial evidence. Accordingly, the undersigned **RECOMMENDS** that the Commissioner's decision be affirmed, plaintiff's motion for summary judgment (Dkt. No. 14) be **DENIED**, and the defendant's motion for summary judgment (Dkt. No. 16) be **GRANTED**.

The Clerk is directed to transmit the record in this case to Samuel G. Wilson, United States District Judge, and to provide copies of this Report and Recommendation to counsel of

record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusion reached by the undersigned may be construed by any reviewing court as a waiver of such objection.

        Entered: June 28, 2010.

        */s/ Michael F. Urbanski*

        Michael F. Urbanski
        United States Magistrate Judge